UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN EDWARD FOX,

    Petitioner,

           CASE NO. 2:10-CV-10362
v.             JUDGE DAVID M. LAWSON
           MAGISTRATE JUDGE PAUL J. KOMIVES

PAUL KLEE,

    Respondent.[1]
_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.   RECOMMENDATION: .................................................................... 2
II.  REPORT: ................................................................................ 2
    A.   *Procedural History* ................................................................ 2
    B.   *Factual Background Underlying Petitioner's Conviction* ................................ 5
    C.   *Standard of Review* ................................................................ 7
    D.   *Ineffective Assistance of Counsel* .................................................. 10
        1.   *Clearly Established Law* ..................................................... 10
        2.   *Analysis* ................................................................... 12
            a.   *Admission of Guilt* ................................................... 12
            b.   *Failure to Investigate* ................................................ 13
    F.   *Recommendation Regarding Certificate of Appealability* ............................. 15
        1.   *Legal Standard* ............................................................ 15
        2.   *Analysis* ................................................................. 16
    G.   *Conclusion* ..................................................................... 17
III. NOTICE TO PARTIES REGARDING OBJECTIONS: ........................................ 17

---

[1]By Order entered this date, Paul Klee has been substituted in place of Michael W. Curley as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Norman Edward Fox is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

2.      On October 8, 2002, petitioner was convicted of three counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1); and two counts of second degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a), (b), following a jury trial in the Oakland County Circuit Court. On October 29, 2002, he was sentenced to concurrent terms of 15-30 years' imprisonment on each CSC-I conviction and 10-22½ years' imprisonment on each CSC-II conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> DEFENDANT-APPELLANT NORMAN FOX WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL AGREED TO CONSOLIDATION OF TWO DIFFERENT FILES INVOLVING THREE DIFFERENT GIRLS AT DIFFERENT TIMES AND UNDER DIFFERENT CIRCUMSTANCES, AND WHERE TRIAL COUNSEL TOLD THE JURY HIS CLIENT WAS GUILTY.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Fox*, No. 244936, 2004 WL 1259721 (Mich. Ct. App. June 8, 2004) (per curiam).

4.      Petitioner sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Fox*, 471 Mich. 952, 690 N.W.2d 107 (2004).

5. Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508 raising, through counsel, the following claims:

    I. GOOD CAUSE WITHIN THE MEANING OF MCR 6.508 IS DEMONSTRATED UNDER A TRADITIONAL INEFFECTIVE ASSISTANCE OF COUNSEL ANALYSIS WHERE COUNSEL FAILED TO PROPERLY INVESTIGATE AND PREPARE THIS CASE FOR AN APPEAL.

    II. IN INTERESTS OF JUSTICE STANDARDS OF MICH. COMP.L. § 770.1 AND 770.2 PERMIT THIS COURT TO GRANT A DELAYED MOTION FOR NEW TRIAL AT ANY TIME IN THE INTEREST OF JUSTICE AND THIS SUBSTANTIVE RIGHT CONTROLS IN THIS CASE OVER THE PROCEDURAL RULES CONTAINED IN M.C.R. 6.500 ET SEQ LIMITING POST-CONVICTION RELIEF TO CASES IN WHICH A CRIMINAL DEFENDANT CAN DEMONSTRATE CAUSE (OR ACTUAL INNOCENCE AND ACTUAL PREJUDICE).

    III. DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL (A) FAILED TO PUT FORTH AN ADEQUATE DEFENSE BY FAILING TO ADEQUATELY IMPEACH SAMANTHA'S TESTIMONY; (B) BY FAILING TO FULLY INTRODUCE EVIDENCE OF THE DEFENDANT'S MENTAL HEALTH WHICH WAS RELEVANT BOTH TO EXPLAIN THE DEFENDANT'S UNUSUAL BEHAVIOR AND TO EXPLAIN WHY THE DEFENDANT'S "CONFESSION" WAS INHERENTLY UNRELIABLE. THE AVERAGE JUROR WAS UNABLE TO UNDERSTAND THE POSSIBILITY THAT THE POLICE COULD HAVE EXTRACTED INACCURATE "ADMISSIONS" UTILIZING THE METHOD OF INTERROGATION INVOLVED GIVEN THE PHYSICAL INJURIES THE DEFENDANT HAD SUFFERED TO HIS BRAIN. EVEN THOUGH AN INEFFECTIVE ASSISTANCE OF COUNSEL ARGUMENT WAS PREVIOUSLY PRESENTED TO THE COURT OF APPEALS, THIS ISSUE IS NOT BARRED UNDER THE LAW OF THE CASE BECAUSE THE INEFFECTIVE ASSISTANCE OF COUNSEL CHALLENGE FOCUSES ON A COMPLETELY DIFFERENT ASPECT OF COUNSEL'S PERFORMANCE.

    IV. ASSUMING THAT IT WAS NOT INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL TO NOT DISCOVER THE FOREGOING EVIDENCE, THEN THE DEFENDANT SHOULD BE GRANTED A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

> V. IT WAS A DUE PROCESS ERROR FOR THE STATE TO NOT PRESERVE EVIDENCE OF THE CAREHOUSE INTERVIEW OF THE MINOR CHILD CONDUCTED IN APRIL OF 2002.
>
> VI. THE CUMULATIVE EFFECT OF THESE ERRORS DENIED THE DEFENDANT DUE PROCESS OF LAW.

On September 28, 2007, the trial court denied petitioner's motion for relief from judgment with respect to his fifth and sixth claims, concluding that the claims were without merit. The court also ordered the prosecutor to file a response to petitioner's motion with respect to the ineffective assistance of counsel claims. *See People v. Fox*, No. 2002-183849-FC (Oakland County, Mich., Cir. Ct. Sept. 28, 2007). On March 5, 2008, the court denied the remaining claims on the merits. *See People v. Fox*, No. 2002-183849-FC (Oakland County, Mich., Cir. Ct. Mar. 5, 2008) [hereinafter "Trial Ct. op."]. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Fox*, 485 Mich. 974, 774 N.W.2d 905 (2009); *People v. Fox*, No. 289324 (Mich. Ct. App. Mar. 9, 2009).

      6.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on January 26, 2010, while his motion for reconsideration was pending in the Michigan Supreme Court. Petitioner also requested that the Court hold the case in abeyance pending the resolution of his motion for reconsideration. The Court granted this request. Petitioner filed an amended petition on August 13, 2012. As grounds for the writ of habeas corpus, he raises two separate claims of ineffective assistance of counsel:

> I. PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL COUNSEL TOLD THE JURY HE WAS GUILTY OF THE OFFENSE CHARGED WITH REGARD TO CASSIE CAVILL
>
> II. PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL

> COUNSEL FAILED TO INVESTIGATE AND INTRODUCE EVIDENCE REGARDING HIS MENTAL HEALTH, WHICH WAS RELEVANT TO ASSIST THE JURY IN UNDERSTANDING THAT HIS BEHAVIOR, WHILE UNUSUAL, DID NOT CARRY WITH IT ANY ACTUAL CRIMINAL SEXUAL INTENT.

7. Respondent filed his answer on November, 28, 2012. He contends that petitioner's claims are without merit.

8. Petitioner filed a reply to respondent's answer on December, 21, 2012.

B. *Factual Background Underlying Petitioner's Conviction*

Respondent adopted the prosecution's statement of facts from petitioner's direct appeal that accurately summarize the testimony at trial:

> Nine-year-old SC testified that before she moved to Tennessee, she lived in Michigan with her grandmother, Jannel Fox; grandfather, Petitioner Fox; and her family. (Respondent refers to the minor victims in this case by their initials in order to protect their privacy. Respondent would respectfully request that this Court likewise reference the minors by their initials in any court orders or opinions in this matter.) SC referred to Fox as "Pa." SC's father, Jon Towne, lived in Michigan and SC spent weekends with him. On the date of the offense, Towne picked up SC from her grandmother's house. Later that day, Towne's neighbor, Lori Moore, asked SC if something was wrong. SC often spoke with Moore because they had similar medical conditions. SC had a piece of her colon and bladder removed and had to urinate through a tube in her abdomen. SC told Moore that Fox had stuck his finger in her private part that morning while she was taking a bath. SC said she knew how to take a bath and wash her own hair. After telling SC to lie down and rinse her hair, Fox stuck his fingers in her private part. Fox left, came back with KY Jelly, and did it again. SC used KY Jelly to lubricate her catheter, but never on her private parts. SC said that what Fox did to her had happened before. SC never told anyone about the abuse because Fox told her not to tell anyone.
> 
> Six-year-old AC is SC's sister. After AC's sixth birthday, Fox rubbed her privates and put his finger inside her while she was taking a bath. Before AC got out of the tub, Fox asked her if she wanted him to lick her privates. AC demonstrated how Fox "wiggled his tongue" when he asked her the question. Fox also touched AC on the outside of her pants while she was sitting on the couch. The first person AC told about the abuse was her third sister, CC, after CC asked if anything had ever happened. Fox had told AC not to tell anyone what he had done.
> 
> Fifteen-year-old CC testified that she moved to Michigan with her family in February 2002. After CC's mother got a phone call from SC's father, CC picked up

AC from the park and took her into the bathroom. CC learned some information from AC that made her decide to tell what Fox had done to her. CC testified that Fox had grabbed her breasts. CC was in the bathroom getting ready to go out and Fox told her to hurry up. When CC told Fox to "hold on," he grabbed her breasts; she pushed him away. Fox said, "I was just holding on." CC thought Fox's contact with her was intentional.

Moore testified that she was Towne's neighbor. Due to a medical condition, Moore ate through a tube. SC's medical condition caused her to urinate in a tube. Towne had previously discussed with Moore the fact that SC did not want to bathe or "cath" herself. Towne told Moore she could discuss the topic with SC if it came up. On March 23, 2002, SC went over to Moore's house and Moore noticed that something was bothering her. When asked, SC told Moore that her "Pa" hurt her. SC said that whenever she took a bath or did her catheter, Fox would put his fingers in her privates. SC also said, "Now I'm going to be in trouble because I told." SC told Moore that Fox had put his fingers in her privates that morning. SC also told Moore she did not tell anyone earlier because she was scared. Moore told Towne's fiancée about this.

Towne testified that he picked up SC at her grandparents' house around 9:00 a.m. on March 23, 2002. Later that day, Towne's fiancée told him about the conversation she had with Moore. Towne then called SC's mother, Sharon Sexton, and told her what SC had told Moore. Towne and SC met Sexton at a hospital in Novi. Sexton brought CC and AC with her to the hospital. SC and AC were not near each other in the hospital and neither could hear what the other said. Towne never put ointment on SC's privates and was never instructed to do so. Towne did put ointment in the area of SC's catheter, but the catheter was on the left side of SC's body, right below her rib cage. Towne said that SC bathed herself.

Sexton testified that she and her children moved to Michigan in February 2002 due to marital and financial troubles. On March 23, 2002, Sexton was at a friend's house when she received a phone call from her ex-husband. They agreed to meet at the emergency room in Novi. Sexton said that the hole for SC's catheter was next to her belly button. SC "cathed" every two hours and used KY Jelly to lubricate the catheter. SC had not used ointment for her vagina for over 2½ years and never used KY Jelly on her vagina. Sexton never told anyone to apply KY Jelly to SC's vagina. On the date of the offense, Sexton told Fox to make sure the children got a bath. SC had a reputation for lying because she was bi-polar and had Attention Deficit Hyperactivity Disorder (ADHD). But once SC's medication was stabilized, she did much better. AC did not have a reputation for lying.

Dr. Angela Manansala, a pediatrician at Providence Park in Novi, testified that she was working on March 24, 2002 when SC and AC came in to be examined. The girls were separated so they could not hear what the other was saying. SC told Dr. Manansala that her grandfather had rubbed her privates when she was in the bathtub. SC said it happened every time she took a bath. The physical examination of SC was within the normal limits. AC told Dr. Manansala that her grandfather rubbed her privates once while she was on the couch. The physical examination of

6

> AC was also within the normal limits. Dr. Manansala could not rule out that digital penetration took place.
>
> South Lyon Police Sergeant Chris Sovik testified that he interviewed Fox. Initially, Fox denied doing anything to his granddaughters. But Fox later admitted it might have been "possible" that he may have touched the girls inappropriately. Fox admitted he put KY Jelly on his middle finger and put it between SC's legs. Fox told Sovik that without the medication, SC was "itchy and hopping around." When asked if it was possible that he could have touched his granddaughters inappropriately on the crotch, Fox said, "Maybe I could have." Fox never accused his granddaughters or their mother of lying.
>
> Protective Services Worker Michelle Mullen testified that she spoke to Fox and his wife. When asked if his granddaughters ever asked him not to touch or bathe them, Fox said, "Yes." Fox admitted he grabbed CC's breasts, but said it was a misunderstanding. Fox said he applied KY Jelly to SC at the direction of his daughter-in-law. Fox admitted to sticking his finger inside SC, but not on purpose. Fox believed that SC's father and neighbor had concocted the story.
>
> Following the denial of Fox's motion for directed verdict, a discussion was held regarding his decision to admit his guilt as to Count V, the touching of CC. Fox said he would have no problem if defense counsel conceded his guilt of Count V.
>
> Jannel Fox, the girls' grandmother, testified on behalf of her husband, Fox. Mrs. Fox testified that Fox had a good relationship with his grandchildren. In October 1992, Fox fell off of some scaffolding and split his head open. And after a seizure in May 1999, Fox's comprehension and understanding was much slower. Mrs. Fox testified she had put ointment on SC's vaginal area. Mrs. Fox said that SC lies and that AC copies her. Mrs. Fox believed that CC was telling the truth. Mrs. Fox thought that Fox was kidding when he touched CC, but she did not condone Fox's touching. In the past, Mrs. Fox said she had put vitamin E hand cream on SC's vagina. Mrs. Fox did not tell Fox to put KY Jelly on SC's vagina.

Resp't Br. at 9 - 14.

Petitioner concedes that respondent's statement of the trial facts is generally accurate. Petitioner adds in his counter-statement of facts that the medical examination preformed on the two youngest granddaughters revealed that both of their hymens were still intact after the alleged incidents (Trial Tr. 10/8/02 at 28-29).

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited

9

to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Ineffective Assistance of Counsel*

      1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an

10

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with

the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2. *Analysis*

### a. *Admission of Guilt*

Petitioner claims that trial counsel was inadequate for admitting guilt to Count V, second degree criminal sexual conduct, brought about by petitioner touching his teenage granddaughter's breast. This claim is without merit. The admission of guilt to the jury was not inadequate because petitioner had admitted touching his granddaughter's breast during a police interview and also to trial counsel. Although petitioner claims that it was not meant sexually, and that he had used poor judgement in touching her breast, he admitted that the event did in fact take place. Trial counsel cannot be held inadequate for wanting to admit guilt to a charge that petitioner admitted had happened thereby allowing the jury to focus on the other four more serious charges. Furthermore, petitioner consented to counsel admitting guilt to Count V. Petitioner was questioned on record about his willingness to admit guilt to Count V:

12

| | |
|---|---|
| DEFENSE COUNSEL: | As long as you're standing, I discussed with you my request to you that we admit to the jury that you are guilty of Count V as to [CC] - |
| PETITIONER: | Yes. |
| DEFENSE COUNSEL: | - because you basically admitted that to the police and you said to me that you are guilty of that. Do you have any problem with my telling the jury that we admit that? |
| PETITIONER: | No. |

Trial Tr. 10/08/02 at 71.

Petitioner clearly indicated on record that he did not have any objection to counsel admitting guilt to Count V. Because of petitioner's admission to the police and to counsel that he did touch his granddaughter's breast, and his agreement on record to admit guilt, counsel's admission of guilt to the jury to Count V was an not unreasonable. *See Florida v. Nixon,* 543 U.S. 175, 188-90 (2004). Therefore, petitioner is not entitled to habeas relief on this claim.

### b.   Failure to Investigate

Petitioner next claims that counsel was ineffective for failing to investigate and introduce evidence regarding petitioner's mental health. Specifically, petitioner claims that counsel should have introduced evidence of petitioner's mental health in order to prove that his behavior, although unusual, did not carry with it any actual criminal sexual intent. This argument is also without merit. Trial counsel's argument at trial was based on an innocence theory. Counsel decided, based on petitioner's continued claim he had never inappropriately touched his granddaughters, that an innocence defense was a better strategy than basing his defense on lack of criminal sexual intent. Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel." *Gluzman v. United States*, 124 F.Supp.2d 171, 174 (S.D.N.Y. 2000). Petitioner denied during the police investigation and to trial counsel that

he had digitally penetrated his two youngest granddaughters, therefore counsel's decision to pursue an innocence defense was appropriate. As explained in *Strickland*, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691.

Petitioner contends that trial counsel "failed to investigate and introduce evidence regarding his mental health, which was relevant to assist the jury in understanding that his behavior, while unusual, did not carry with it any actual criminal sexual intent" (Pet'r's Br. in Support at 36). Under Michigan law, first degree criminal sexual conduct requires the prosecutor to prove "sexual penetration". MICH. COMP. LAWS § 750.520b(1). Second degree criminal sexual conduct requires the prosecutor to prove "sexual contact." MICH. COMP. LAWS § 750.520c(1)(a), (b). "Sexual penetration can be for any purpose. The statute defines sexual contact, however, as touching that 'can reasonably be construed as being for the purpose of sexual arousal or gratification.'" *People v. Lemons*, 454 Mich. 234, 253, 562 N.W.2d 447, 456 (1997)(quoting MICH. COMP. LAWS § 750.520a(k)). Accordingly, if trial counsel would have sought out expert witnesses to testify on petitioner's behalf, and, instead of focusing his defense on petitioner's claim that the alleged instances of digital penetration had never happened, focused his efforts on petitioner not having the intent needed for a second degree criminal sexual conduct conviction, petitioner still could have been found guilty of the three first degree sexual conduct charges because first degree criminal sexual conduct does not require intent of sexual arousal or gratification; it merely requires proof of the act itself. Trial counsel could not have raised both innocence and lack of intent defenses as they are contradictory to one another. Admitting that petitioner had digitally penetrated his granddaughters would have been an admission of guilt to all three first degree criminal sexual

14

conduct charges. "Many courts have concluded that a decision not to present inconsistent defenses cannot be condemned as ineffective." *Wilson v. United States,* 414 F.3d 829, 831 (7th Cir. 2005) (citing cases); *See Jackson v. Shanks,* 143 F.3d 1313, 1326 (10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance."). Trial counsel's strategy, if successful, would have exonerated petitioner of all the counts against him regarding digital penetration of his two youngest granddaughters; a lack of sexual intent defense would have exonerated him only on two of the five counts against him. Counsel's decision to base his defense on an innocence theory was not only based on what petitioner had claimed to be the case, but was also the better trial strategy.

For the reasons discussed above habeas relief should be denied for this claim.

F.     *Recommendation Regarding Certificate of Appealability*

  1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. The decision to admit guilt as to Count V to the jury cannot be considered to be inadequate when petitioner had himself admitted guilt to the event that brought about Count V. And because it is clear that trial counsel reasonably based his defense theory on petitioner's claims of innocence, and that a lack of intent defense would have been an admission of guilt to the three first degree criminal sexual conduct charges, petitioner's claims are not reasonably debatable.

G.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                S/Paul J. Komives
                PAUL J. KOMIVES
                UNITED STATES MAGISTRATE JUDGE

Dated: July 25, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 25, 2013.

                s/Felicia M. Moses
                FELICIA M. MOSES
                *Acting Rotating Case Manager*