UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN EDWARD FOX,

                 Petitioner,                     Case Number 10-10362

v.                                           Honorable Davis M. Lawson

                                               Magistrate Judge Paul J. Komives

PAUL KLEE,

                 Respondent.

_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PETITIONER'S OBJECTIONS,
AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court are the petitioner's objections to a report issued by Magistrate Judge Paul J. Komives recommending that petitioner Norman Fox's petition for a writ of habeas corpus be denied. Fox was convicted by an Oakland County, Michigan jury of three counts of first-degree criminal sexual conduct (CSC), Mich. Comp. Laws § 750.520b(1), and two counts of second-degree CSC, Mich. Comp. Laws § 750.520c(1)(a), (b), arising from incidents involving Fox's granddaughters. He was sentenced as an habitual offender to concurrent prison terms totaling 15 to 30 years. After an unsuccessful round of direct appeals in the state court, followed by the denial of a post-conviction motion by the trial court, also affirmed by the state appellate courts, the petitioner filed his habeas corpus petition through counsel. The case was assigned to Magistrate Judge Komives. After the report and recommendation was filed, the petitioner filed timely objections. The Court has conducted a *de novo* review of the petition, response, and state court record in light of the objections filed, and agrees with the magistrate judge's conclusions. Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation, and deny the petition.

I.

In discussing the facts of the case, the magistrate judge quoted a passage from the state prosecutor's brief on direct appeal, suggesting that the petitioner generally agreed to the accuracy of the summarization of the trial testimony. In his objections, the petitioner takes issue with that suggestion, and insists that, while accurate, the summary was incomplete. The Court has reviewed the petitioner's recitation of facts in his amended petition, which expounds on the basic facts of the case and adds quite a bit of commentary cast in favor of the petitioner. However, the fact summary relied upon by the magistrate judge was accurate, and the petitioner's own exegesis does not undermine the magistrate judge's recommendations or conclusions.

The petitioner was charged with digitally penetrating his nine-year-old granddaughter on two occasions and his six-year-old granddaughter once while bathing the children, touching the six-year-old's private parts outside her clothing, and grabbing the breasts of his fifteen-year-old granddaughter. The petitioner made statements to a police officer and a protective services worker acknowledging certain contact, but he denied that he acted with a sexual purpose.

The habeas petition presents two claims of ineffective assistance of trial counsel. The first — that trial counsel was ineffective because he told the jury that the petitioner was guilty of second-degree CSC for touching the fifteen-year-old's breasts — was raised on direct appeal. The second claim is that trial counsel should have investigated and produced evidence of the petitioner's mental health to support the argument that no criminal sexual intent accompanied his "unusual" behavior. That issue was raised in a state court post-conviction motion. The Michigan Court of Appeals rejected the first argument, and the state trial court rejected the second in a written opinion. The

magistrate judge concluded that neither decision was contrary to or unreasonably applied federal constitutional law, or was based on an unreasonable determination of the record facts.

As noted, the petitioner filed timely objections to the report and recommendation.

## II.

Objections to a magistrate judge's report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge . . . may accept, reject, or modify, in whole or in part, the findings to which objection is made." 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 220-21 (2007). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

## A.

The magistrate judge applied the deferential review standard mandated by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28

-3-

U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (holding that the AEDPA requires a federal habeas court to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's ruling." (quoting *Yarborough v. Alvarado*, 541 U.S. 652 (2004))). The Sixth Circuit has observed that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012).

The petitioner has not questioned the application of that standard in this case. In fact, the petitioner does not discuss the standard of review in his objections. Because AEDPA jurisprudence has created such a formidable obstacle to state prisoners asserting claims of ineffective assistance of counsel, the standard bears repeating here.

To succeed on an ineffective assistance of counsel claim on direct appeal, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice from counsel's failure to investigate or call a potential witness, a petitioner must show that had the witness testified, "the result of the proceeding would have been different." *Landrum v. Mitchell*, 625 F.3d 905, 921 (6th Cir. 2010) (quoting *Strickland*, 466 U.S at 694).

On habeas review, the petitioner's burden is even greater. The Supreme Court explained in *Richter* that

-4-

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Ibid.* Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

In other words, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Alvarado*, 541 U.S. at 664).

## B.

The magistrate judge suggested that counsel's strategic decision to admit that his client was guilty of second-degree CSC was "not unreasonable." The petitioner objects to that conclusion, insisting that the admission was tantamount to a guilty plea, and that the trial court failed to employ any of the procedural safeguards that are required to ensure a knowing and intelligent waiver of important trial rights. In light of the review standard cited above, the focus of the present inquiry is not whether counsel's decision to admit guilt was "reasonable"; instead it is whether the state

-5-

appellate court's coordinate determination, viewed with due "deference and latitude," was reasonable in light of Supreme Court precedent.

In rejecting the petitioner's ineffective-assistance-of-counsel claim on direct appeal, the state court wrote:

> Defendant also contends that counsel was ineffective because he admitted defendant's guilt to one of the charges. We disagree. Given the evidence against defendant as to that charge, including defendant's admission that the touching occurred, counsel made a reasonable strategic decision to admit guilt on that charge but maintain innocence on the remaining charges, a strategy to which defendant agreed on the record.

*People v. Fox*, No. 244936, 2004 WL 1259721, at *1 (Mich. Ct. App. June 8, 2004). The magistrate judge noted that at trial, the petitioner expressly consented to that strategy on the record. Perhaps additional inquiry by the trial judge would have been prudent. But the absence of further colloquy does not undermine the state appellate court's holding.

The magistrate judge also cited *Florida v Nixon*, 543 U.S. 175 (2004), a case decided on direct appeal, where the Supreme Court held that trial counsel did not render constitutionally ineffective assistance when he admitted his client's guilt at the guilt phase of a capital murder trial without his client's express consent to that strategy. The petitioner here argues that *Nixon* is an outlier, but he does not develop that argument or cite any authority (let alone Supreme Court authority) questioning its holding.

In *Nixon*, trial counsel testified that he explained to his client his view of the case, recommended that he concede guilt and focus their efforts on the penalty phase to avoid a death sentence, and that "at each consultation, Nixon 'did nothing affirmative or negative.'" *Id.* at 186. The Court reiterated that counsel had a duty to "consult with the client regarding 'important decisions,' including questions of overarching defense strategy" *Id.* at 187 (citing *Strickland*, 466

-6-

U.S. at 688).  But the Court added that counsel need not "obtain the defendant's consent to 'every tactical decision.'"  *Ibid.* (citing *Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988)).  The Court reiterated, however, that the defendant retains unto himself the right to make decisions as to "basic trial rights," which include "'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'"  *Ibid.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Nixon argued, as does the petitioner here, that admitting guilt in the trial's initial phase was "the functional equivalent of a guilty plea," and the same procedural protections should have been afforded him.  The Supreme Court, however, "disagree[d] with that assessment."  *Id.* at 188.  After describing the essential differences between a guilty plea and a tactical admission of guilt at a trial, the Court explained that the proper focus in an effective assistance challenge must be on counsel's performance in light of *Strickland*'s presumption of reasonableness.  *Id.* at 189.  The Court found that counsel's performance in fact was reasonable, in light of the clear record that he explained his tactical decision to his client, even though he did not obtain express consent.  The Court held that "Nixon's characteristic silence each time information was conveyed to him, in sum, did not suffice to render unreasonable [trial counsel]'s decision to concede guilt and to home in, instead, on the life or death penalty issue."  *Ibid.*

*Nixon* was a death penalty case; and the Supreme Court acknowledged that "such a concession in a run-of-the-mine trial might present a closer question."  *Id.* at 190.  But that acknowledgment does not render the precedent irrelevant to the assessment of the state appellate court's decision in this case.  Here, there was on-the-record consent by the petitioner to the proposed defense strategy.  There is nothing in the record to suggest that the choice was not a fully informed one.  Even in a guilty plea context, the Supreme Court has held that habeas review is limited to

-7-

whether the plea was voluntary, intelligent, and knowing. *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748.

Here, the petitioner was given a psychological evaluation and found competent to stand trial. He had been informed of the nature of the charges and the possible penalties. And he agreed on the record to trial counsel's strategy. In hindsight, there is, perhaps, reason to question counsel's strategic choice. However, the state appellate court articulated a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. Therefore, the petitioner is not entitled to habeas relief, and his objections to the disposition of this claim will be overruled.

## C.

The magistrate judge also suggested that trial counsel's decision not to investigate the petitioner's mental health or offer evidence on that question to negate criminal sexual intent was not unreasonable. The crux of the magistrate judge's reasoning is that trial counsel made a reasonable strategic choice of pursuing an "innocence theory" based on the petitioner's persistent claim that he never touched his granddaughters inappropriately, instead of focusing on the idea that any acts of penetration or contact were committed with a lack of criminal intent. In fact, the magistrate judge

even determined that trial counsel's choice was the better strategy, because admitting penetration would have conceded guilt of the first-degree CSC charges, since that is a general intent crime not susceptible to a lack-of-specific-intent defense.

The petitioner objects to that conclusion, arguing that the magistrate judge mischaracterized the petitioner's defenses and trial counsel's strategic choices. He points out that defense counsel introduced in his opening statement the defense that if penetration occurred, it was unintentional. He insists that defense counsel should have introduced evidence of the petitioner's "mental status" to show that the petitioner's "behavior, although apparently malevolent if engaged in by a normal adult male, was in fact benign and devoid of any evil, sexual purpose."

The state trial judge addressed this claim when she denied the petitioner's post-conviction motion for relief from judgment. That is the "last reasoned opinion" from the state court, and it is entitled to "double[] deferen[ce]" under AEDPA and *Strickland*. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (holding that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"); *see also Burt v. Titlow*, --- U.S. ---, 134 S. Ct. 10, 13 (2013) (holding that on habeas review of ineffective-assistance-of-counsel claims, the Supreme Court "require[s] that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt") (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). The trial judge determined that the proposed defense expert — a "psychology nurse" — was not qualified to render an opinion on forensic psychiatry or closed head injuries. The court also found that the petitioner was not deprived of a defense because trial counsel presented lay evidence

explaining the petitioner's "unusual behavior."  Moreover, the defense theory was that no penetration occurred, not that there was a lack of intent.

The petitioner argues that the trial judge missed a few key points on this issue.  For one, he contends that the "psychology nurse's" report was offered not as potential trial testimony, but to show that further investigation by defense counsel into the petitioner's earlier head injury was warranted.  But that argument was not well developed in the state court.  In the post-conviction motion, the petitioner criticized his trial lawyer because he failed to investigate and offer evidence on the petitioner's cognitive abilities "to mitigate the intent of the alleged conduct."  Pet.'s App. at 97a.  That suggests, perhaps, that the petitioner was criticizing defense counsel for not pursuing a defense that focused on negating intent, although the conclusion to be drawn from the post-conviction motion is far from clear.

The magistrate judge noted that defense counsel would have made a poor strategic choice had he attempted to "mitigate the intent" of any acts of penetration.  Under state law, first-degree CSC is defined as a general intent crime.  *See People v. Langworthy*, 416 Mich. 630, 643-44, 331 N.W.2d 171, 176 (1982) (stating that "[n]either the first-degree criminal sexual conduct statute nor the corresponding statutory definition of 'sexual penetration' contains any language whatsoever regarding intent").  And although CSC is not a strict liability crime, the prosecution was not required to prove that the petitioner digitally penetrated the victims with an "evil, sexual intent," as the petitioner argues.  Moreover, an attempt to negate intent through evidence of a professed mental illness or defect falls within the ambit of a diminished capacity defense, which was abolished in Michigan by the state supreme court the year before the petitioner's trial.  *People v. Carpenter*, 464

-10-

Mich. 223, 237, 627 N.W.2d 276, 283 (2001); *see also Metrish v. Lancaster*, --- U.S. ---, 133 S. Ct. 1781, 1784 (2013).

All of that weighs into the consideration of the reasonableness of the state trial judge's conclusion that the petitioner was not deprived of the effective assistance of counsel. Certainly, additional investigation into the petitioner's mental status could have been performed, but where would it have led? Defense counsel apparently had questioned the petitioner's psychological health, which led to a competency evaluation. There is no evidence in this record that convincingly shows that he should have pressed the issue further. The magistrate judge suggested that challenging the intent element of second-degree CSC may have required admitting penetration on the first-degree charges, which would have amounted to a risky strategy of presenting inconsistent defenses. Counsel cannot be criticized for avoiding that course. *See Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005). The trial judge found that even without expert testimony, the petitioner was able to present the defense that explained his unusual behavior through lay testimony. It is fair to conclude from that reasoning that even if counsel's performance would be deemed deficient, the state court would have found no prejudice. And although one might not accept that conclusion, "'fairminded jurists could disagree' on the correctness of the state court's ruling." *Richter*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. 652 (2004)).

Because of the substantial deference afforded to state courts on ineffective-assistance-of-counsel claims, it cannot be said here that the Michigan trial judge unreasonably applied *Strickland* when adjudicating the petitioner's post-conviction motion. The petitioner's objections to the magistrate judge's report on this claim will be overruled.

-11-

III.

The Court agrees with the magistrate judge's statements of the law and his analysis.  The Court concludes that the petitioner is not in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt. #15] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt #14] is **ADOPTED**.

It is further **ORDERED** that the petition and amended petition for a writ of habeas corpus are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 30, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

-12-